## THE BAY QUEEN.[1]

### STANTON *et al. v.* THE BAY QUEEN.

(*District Court, S. D. New York.* April 9, 1890.)

COLLISION—MUTUAL FAULT—STEAMER AND SAIL-BOAT BECALMED—LACK OF ROW-LOCKS.
  When a small sail-boat lay becalmed, her condition being visible to a steam-boat with a barge along-side, which approached her head on, between the Brothers and Riker's Island, in the East river, and collision ensued between the vessels, *held*, that the steam-boat was in fault for running down the sail-boat; but *also held*, that the latter was to blame for the lack of proper oars and row-locks in place, to aid in getting out of danger in such an emergency. The damages were therefore divided.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty. Action for damage by collision.

*Robert L. Stanton*, for libelants.

*Wing, Shoudy & Putnam*, for claimants.

BROWN, J. In the case of *The Plymouth*, 26 Fed. Rep. 879, in the first circuit, it was assumed that the obligations of a tug-boat with a tow towards "a little sail-boat" were the same as towards a larger craft. In the case of *The Missisquoi*, 8 Ben. 6, the libel was dismissed, because the small boat had time to pull out of the way, and did not do so, her duty in that regard "being conceded in the libel." Article 24 of the rules of navigation declares that nothing in the rules shall excuse neglect of "any precaution required by the ordinary practice of seamen, or by the special circumstances of the case." It is certainly the common practice of seamen, and but a reasonable exercise of common sense, that small boats, whether with or without sails, should do something to keep out of the way of impending collision with large and cumbersome vessels, and be provided with the ordinary means of oars for doing so. The libelant's boat was a small craft, about 20 feet long, with a flat bottom, a center-board, two sails, and no jib. Being suddenly becalmed, after the passage of a thunder shower, she was run down, in the East river, between the Two Brothers and Riker's Island, about 5 P. M., by the steamer Bay Queen, which had a passenger barge in tow along-side. The boats were approaching about head and head. The small boat being becalmed, it was plainly the duty of the steamer to avoid her by turning either to the right or the left. Her sails were drooping, her sheets dragging in the water. This was visible at a sufficient distance. The Bay Queen might have avoided her by starboarding more promptly, or by reversing, which she did not do. Seeing that the boat was mainly helpless, the Bay Queen was in fault for running her down. The small boat must also be held to blame for the lack of any ready means of getting out of danger in such emergencies. Had her row-locks been in place, even with the small oars or paddles that she had, I have no doubt the libelants would have turned and rowed her out of danger after they saw that the Bay Queen was not likely to clear her. Even very much larger sailing vessels are in the habit of providing means, and keeping them in readiness, for use to avoid the dangers to which they are liable when becalmed. In the case of *The B. K. Washburn*, 19 Fed. Rep. 788, this court held a schooner becalmed jointly liable for not using such means to avoid collision. Decree for the libelants for half their damages and costs.